COURT OF APPEALS OF VIRGINIA

Present:  Judges Barrow,[*] Koontz and Elder
Argued at Richmond, Virginia


EDWIN JOSEPH TRAVIS
                                              OPINION BY
v.         Record No. 2465-93-1        JUDGE LARRY G. ELDER
                                              MAY 23, 1995
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                      Glen A. Tyler, Judge

          Jeffrey C. Flax (Kelberg, Childress and Flax,
          on brief), for appellant.

          Steven A. Witmer, Assistant Attorney General
          (James S. Gilmore, III, Attorney General; Margaret
          Ann B. Walker, Assistant Attorney General, on
          brief), for appellee.


     Edwin Joseph Travis (appellant) appeals his felony

conviction for driving a motor vehicle after having been

adjudicated an habitual offender in violation of Code § 46.2-357.

 Appellant contends:  (1) an habitual offender who is granted a

restricted privilege to drive pursuant to Code § 46.2-360(2) does

not remain an habitual offender subject to prosecution under Code

§ 46.2-357 for driving in violation of the restrictions; and

(2) there was insufficient evidence to prove that appellant's

driving "of itself" endangered the life, limb, or property of

another in violation of Code § 46.2-357(B)(2).  Because the trial

court committed no error, we affirm the conviction.

_____

     [*]Judge Bernard G. Barrow participated in the hearing and
decision of this case and joined in the opinion prior to his
death.

I.

FACTS

On January 9, 1989, appellant was declared an habitual offender by the Circuit Court of Northampton County, pursuant to Code § 46.2-351 (formerly Code § 46.1-387.2). As a result, appellant's driving privileges were revoked for ten years. In 1992, appellant petitioned the same court for restoration of his driving privileges pursuant to Code § 46.2-360. The court entered an order on September 18, 1992, specifically finding that appellant met the criteria of Code § 46.2-360(2). Pursuant to this section, the court determined that appellant no longer constituted a safety threat to himself and others with regard to the driving of a motor vehicle. The court thereafter allowed appellant to operate a vehicle to and from his place of employment and to and from the mandatory Virginia Alcohol Safety Action Program (ASAP).

On April 22, 1993, Virginia State Trooper Alan Gladden observed appellant's vehicle parked at a restaurant at approximately 11:15 p.m. Gladden knew not only appellant's status as an habitual offender but also the restrictions on appellant's driving privileges. After Gladden observed appellant leave the restaurant and enter his car, he followed appellant for approximately one mile. Gladden testified that appellant weaved within his lane of travel and over the left line of the lane. Because he suspected appellant of driving under the influence of

2

alcohol, Gladden pulled appellant's vehicle over to the roadside and administered field sobriety tests.  Gladden also administered a blood alcohol test, which revealed that appellant was driving with a blood alcohol level of .14.  Appellant was arrested at 11:47 p.m.

Appellant was indicted upon a charge of operating a motor vehicle after having been declared an habitual offender in violation of Code § 46.2-357.  He was also charged with operating a motor vehicle while under the influence of alcohol in violation of Code § 18.2-266.  A jury trial held on November 15, 1993 resulted in a mistrial on the charge of driving under the influence, but resulted in a felony conviction on the habitual offender charge of Code § 46.2-357.  Appellant was sentenced to twelve months in jail.

## II.

### HABITUAL OFFENDER STATUS

The facts show that appellant was an habitual offender as defined in Code § 46.2-351 and that his driving privileges had been revoked for a period of ten years.  Despite his status, the trial court, on September 18, 1992, entered an order finding that appellant met the criteria of Code § 46.2-360(2)[1] and allowed

_____

[1]  This statutory section states that a court may grant an habitual offender a restricted driving permit if the court is satisfied that (1) at the time of the previous convictions, the offender was addicted to or psychologically dependent on the use of alcohol or other drugs; (2) at the time of the hearing on the petition the offender is no longer addicted to or psychologically dependent on the use of alcohol or other drugs; and (3) the offender does not constitute a threat to the safety and welfare

3

appellant to operate a vehicle for limited purposes on a restricted license[2] in accordance with the procedures of Code § 18.2-271.1(E). As Code § 46.2-360(2) states, "[a]ny violation of the restrictions shall be reported to the court, and the court may then modify the restrictions or revoke the license."

We affirm the trial court's ruling that the Commonwealth properly charged appellant with a felony violation of Code § 46.2-357(B)(2) after arresting him for driving while intoxicated on April 22, 1993. According to Code § 46.2-357, it is unlawful for an habitual offender to drive a motor vehicle "while the order of the court prohibiting such operation remains in effect." An habitual offender who is found operating a vehicle on the Commonwealth's roadways shall be guilty of either a misdemeanor or a felony. A <u>misdemeanor</u> charge is appropriate where the habitual offender's driving, "does <u>not</u>, of itself, endanger the life, limb, or property of another." Code § 46.2-357(B)(1) (emphasis added). On the other hand, the habitual offender may be charged with a <u>felony</u> if his or her driving, "of itself, <u>does</u> endanger the life, limb, or property of

---

of himself and others with regard to the driving of a motor vehicle.

[2] The limited privileges granted in this case conform to the privileges enumerated in Code § 18.2-271.1(E), which include limited privileges such as driving to and from work and to and from an alcohol treatment program. Code § 46.2-360 also gives a court the option of restoring <u>full</u> driving privileges to an habitual offender. Code § 46.2-360(1).

4

another."  Code § 46.2-357(B)(2) (emphasis added).[3]

In reaching our conclusion, we reject two contentions proposed by appellant.  First, we do not believe that because the trial court found that appellant no longer constituted a threat to himself or others with regard to operating a motor vehicle, appellant was no longer an habitual offender.  Code § 46.2-360(2) specifically states that any violation of driving privileges may lead to a modification of the court order or a subsequent revocation of the habitual offender's driver's license.  The continuing authority of the court to modify or revoke the license belie appellant's assertion that his adjudication as an habitual offender was no longer valid.  As the Commonwealth contends, the trial court granted a restricted license under subsection (2) of Code § 46.2-360, not subsection (1), the subsection granting a full restoration of driving privileges.  Appellant's status as an habitual offender continued despite his limited driving privileges, and he was properly charged under Code § 46.2-357 because he operated a motor vehicle during times not authorized

---

[3]  Code § 46.2-357(B)(2) added the language "If such driving, of itself, does endanger the life, limb, or property of another, such person shall be guilty of a felony" effective July of 1993.  Before this time, there was no misdemeanor-felony classification; a violation of this section resulted in a felony conviction.

This amended section became effective over two months <u>after</u> the offense was committed but before appellant went to trial.  However, the issue over which version of the statute to proceed under was not preserved on appeal, nor does it appear in the parties' briefs.  It appears from the Commonwealth's brief that the Commonwealth acquiesced in proceeding under the 1993 amended version.

by the trial court.

Second, we reject appellant's assertion that prosecution for a violation of his driving privileges must be pursuant to Code § 46.2-301, an alternate section, dealing with unlicensed driving, which provides for a misdemeanor conviction instead of a felony conviction. Appellant contends that Code § 46.2-360(2), the section allowing the grant of a restricted license, states that a restricted license is issued pursuant to Code § 18.2-271.1(E), which in turn provides that "[a]ny person who operates a motor vehicle in violation of any restrictions imposed pursuant to this section shall be guilty of a violation of Code § 46.2-301,"[4] which is a Class 2 <u>misdemeanor</u>.

While Code § 46.2-360(2) references Code § 18.2-271.1, this reference is for the limited purpose of using the latter's procedures for <u>issuing</u> a restricted permit, not for using its punishment provisions, which are part of the Code sections dealing with DUI offenders, not habitual offenders.[5] In our view, appellant was violating restrictions imposed pursuant to Code §§ 46.2-360 and 46.2-357, not Code § 18.2-271.1. "[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner,

---

[4] This section was amended in July 1993 and substituted "Code § 18.2-272" for "Code § 46.2-301."

[5] Furthermore, Code § 18.2-271.1 states, if the offender "operates a motor vehicle in violation of any of the restrictions <u>imposed pursuant to this section</u>," he or she shall be guilty of violating Code § 46.2-301 (emphasis added).

6

the two should be harmonized, if possible, and where they conflict, the latter prevails." Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979) (emphasis added); see also Penton v. City of Norfolk, 16 Va. App. 141, 428 S.E.2d 309 (1993). Thus, the punishment provisions of Code § 18.2-272 are superseded by provisions directly related to cases involving habitual offenders--the provisions contained in Code § 46.2-357 under which appellant was charged.

## III.

### SUFFICIENCY OF THE EVIDENCE

We also hold that sufficient evidence proved that appellant was driving in violation of Code § 46.2-357(B)(2). The standard for appellate review of criminal convictions is well-established. "When a defendant challenges the sufficiency of the evidence, we are required to review the evidence 'in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom.'" Collins v. Commonwealth, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). "The conviction will not be reversed unless it is plainly wrong or without evidence to support it." Id.; see Code § 8.01-680.

The evidence shows that Trooper Gladden, who was following appellant in a police car, observed appellant weaving within his lane of traffic and even "over the left line." As we recently stated in Bishop v. Commonwealth, 20 Va. App. 206, ___, 455

7

S.E.2d 765, 767 (1995):

> The distinction between negligent
> driving and reckless driving is the critical
> element in determining punishment under Code
> § 46.2-357.  In defining the conduct that
> gives rise to felony punishment under Code
> § 46.2-357(B)(2), the legislature used the
> phrase, "driving [that] . . . endanger[s] the
> life, limb, or property of another," language
> virtually identical to that found in the
> statute defining reckless driving.  See Code
> § 46.2-852 ("driving . . . at a speed or in a
> manner so as to endanger the life, limb, or
> property of any person shall be . . .
> reckless driving.").

Because appellant was weaving within his own lane and into the other lane, the circumstances support a finding that his driving "of itself . . . endanger[ed] the life, limb, or property of another."  Code § 46.2-357(B)(2).

The facts of this case are unlike Bishop, where no evidence proved that the actual manner in which Bishop drove his vehicle endangered the life, limb, or property of another.  In Bishop, this Court held that the driver's intoxication does not constitute per se proof that the driver endangered life, limb, or property, and "the inference drawn solely from Bishop's intoxication, without more, was insufficient to support imposition of felony punishment."  Id. at ___, 455 S.E.2d at 766. In this case, sufficient evidence proved that appellant's driving was dangerous to the life, limb, or property of another.

For these reasons, we affirm appellant's conviction.

Affirmed.

8