**UNITED STATES of America,**

v.

**Jackie C. NICHOLSON, Jr., Defendant.**

No. 4:98cr37.

United States District Court,
E.D. Virginia.

Dec. 22, 1998.

850

Oscar L. Shepherd, Jr., Department of the Army, Headquarters Fort Monroe, Office of the Post Judge Advocate, Fort Monroe, VA, for USA.

Ronald Lee Smith, Hampton, VA, for Jackie C. Nicholson.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendant's motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33. For the reasons set forth below, the motion is **DENIED.**

### I. Factual and Procedural History

On March 19, 1998, defendant, Jackie C. Nicholson, Jr., was charged with driving after being declared a habitual offender, second offense, in violation of 18 U.S.C. §§ 7 and 13 (assimilating Va.Code Ann. § 46.2–357.B.3). Defendant was stopped by Fort Monroe military police while driving on federal land. Defendant was convicted in a bench trial held on October 13, 1998. At trial, the government presented evidence that defendant was declared a habitual offender by an order of the Newport News

Circuit Court entered on February 17, 1993. The order indicated that defendant was present at all stages of the habitual offender proceedings. As a result, the court found that defendant had actual knowledge of his habitual offender status. Moreover, defendant's driving record, introduced into evidence at trial by the government, indicated that defendant's license was revoked due to his habitual offender status. The driving record also contains no indication that defendant was ever issued a restricted license of any type, much less one issued by court order. The government also presented evidence, in the form of certified copies of judgment orders, that defendant was convicted of driving after having been declared a habitual offender in October, 1996.

The arresting officer testified that he stopped defendant for a traffic violation on federal property at the Fort Monroe army base. According to the officer, at no time did defendant indicate, either orally or in any other manner, that he was driving under a restricted license. A records check of the license[1] offered to the officer indicated that the defendant had lost his driving privileges as a result of his habitual offender status.

By way of defense, defendant offered into evidence an order from the York County Circuit Court indicating that defendant was granted a restricted license for the purpose of driving to and from his place of employment and to attend meetings of an alcohol and substance abuse program. The order, however, indicated that defendant's habitual offender conviction occurred on September 11, 1992, and not on February 17, 1993, as reflected in the order presented as part of the government's evidence. Neither defendant nor his counsel could explain this discrepancy.

In addition, both defendant and his wife testified that he had received notice of a show cause hearing held in York County Circuit Court on February 24, 1998. Defendant claimed that he could not attend the hearing because of a surgical procedure that was scheduled for the following day. According to testimony, defendant had to undergo blood work the day before the trial and was on medication. Defendant's wife testified that she informed the York County court of this fact and requested a continuance, but was told that the court would rule on the continuance at the time of the hearing. The court's order indicates that the matter was heard as scheduled, that the defendant did not appear, defendant's motion to continue was denied, and defendant's restricted license, issued on October 24, 1996, was revoked. Defendant claims that he was not served with a copy of the revocation until October 13, 1998, the day of the trial in the instant case. At no time did defendant ever contest the fact that he knew he was a habitual offender as a result of the February 17, 1993, trial, at which he was present.

The court subsequently found that the government had proven all elements of its case beyond a reasonable doubt. The court also found that Nicholson was not a credible witness, and that the order granting defendant a restricted license, which did not comport with the dates on the habitual offender status charged and the habitual offender order in evidence before the court, and which was itself revoked three weeks before the underlying incident in this case, did not raise a reasonable doubt about the government's case.

On October 26, 1998, defendant filed the instant motion for a new trial, claiming that a new trial is warranted because of newly discovered evidence. The government filed a response to defendant's motion on November 16, 1998.[2] Accordingly, the motion is now ripe for determination.

1. It is unclear to the court how defendant came to be in possession of this license. The officer's testimony was that there was no indication of a restriction on the license that he received from Nicholson. Instead, Nicholson claims that he told the officer that he had a restricted license and that he handed the officer a green piece of paper that, supposedly, confirmed his restricted status. However, neither the license nor the green piece of paper was introduced into evidence. The court specifically found that Nicholson's testimony was not credible, and that he never told or indicated to the officer in any way that he was supposedly driving under a restricted license.

2. The court notes that the government's response was not timely filed, see Local Rule 7(e)(1) (stating that the nonmoving party has eleven days to file a response), and, as a result, the court did

## II. Discussion

■ In his motion for a new trial, defendant argues that he is entitled to a new trial based on newly discovered evidence. Under Federal Rule of Criminal Procedure 33, a motion for new trial on this ground must be made "before or within two years after final judgment." Rule 33 goes on to state that "[a] motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period." Because defendant moved for a new trial after the seven-day period, but before the two-year limitation period, his motion on the ground of newly discovered evidence is timely.

■ In order to succeed on his motion for a new trial based on newly discovered evidence, the defendant must satisfy a five-part test:

(i) is the evidence, in fact, newly discovered; (ii) are facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial?

*United States v. Chavis,* 880 F.2d 788, 793 (4th Cir.1989). A negative answer to any part of this test mandates a denial of the motion for a new trial. *Id.*

■ In this case, the court finds that defendant has not sufficiently demonstrated that the evidence he now presents to the court is new evidence that could not have been discovered with due diligence. Defendant first claims that an order obtained from the York County Circuit Court on October 19, 1998, six days after trial in this matter, constitutes newly discovered evidence. However, this order is not evidence in and of itself, but merely a clarification order of readily discoverable discrepancies. The October 19, 1998, order simply corrects and amends errors contained in an order dated October 29, 1996, issued by a different judge of that court. The 1996 order errone-

ously stated that defendant was declared a habitual offender on September 11, 1992, when, in fact, he was actually declared a habitual offender on February 17, 1993. Defendant also submitted copies of court records from Newport News indicating that defendant's habitual offender hearing was originally scheduled for September 11, 1992, but was continued first until December 1, 1992, and then again to February 17, 1993. Although all of this material is very enlightening as to why there were discrepancies between the order declaring defendant a habitual offender and the order granting him a restricted license, there is no question in the court's mind that all of this material was readily discoverable through the exercise of due diligence on the part of defendant and his counsel. As the court indicated at trial, the discrepancies between the two orders were immediately very clear and very apparent to this court. All of the information presented to the court in this motion for a new trial was of record and known by the defendant prior to the trial in this matter. He was present at the February 17, 1993, trial at which he was declared a habitual offender. Having been intimately involved in all of the earlier proceedings, the defendant should have been able to not only immediately identify the discrepancy, as did this court, but also to explain how it occurred.

Moreover, armed with this knowledge, due diligence on the part of defendant and his counsel prior to defendant's trial in this court would have revealed the documents of record now presented. Those same documents were presented to the state court in order to obtain the clarification order of October 19, 1998, and could have been presented to this court at the same time defendant presented the order dated October 29, 1996, containing the erroneous dates. This fact is amply demonstrated by the rapidity with which counsel, presumably with defendant's assistance, was able to gather and present all of the readily available court records to a circuit judge in York County and obtain a clarifica-

---

not consider the government's response when it considered defendant's motion. However, the government suffered no great disadvantage in this case, because, as the trier of fact in this

bench trial, all of the applicable facts and evidence in this case are within the knowledge of the court.

tion order within six days of defendant's conviction in federal court. In finding that defendant, the moving party, did not exercise due diligence, the court emphasizes that *all* of the material underlying the October. 19, 1998, order from York County circuit court was in existence prior to the date of defendant's trial. As stated earlier, that material could have been presented to this court at the trial of this matter in an effort to resolve the readily apparent discrepancy in the evidence. *See United States v. Christy*, 3 F.3d 765, 769 (4th Cir.1993) ("there was no reason that this entire argument could not have been made at or before [defendant's] trial"). To that extent, the recently issued order dated October 19, 1998, is not even "evidence," but is merely a clarification of that readily discoverable discrepancy. Because of the failure to exercise due diligence with regard to the existing evidence, a new trial is not warranted in this case. *See United States v. Bales*, 813 F.2d 1289, 1295 (4th Cir.1987).

■ Not only does the court find that the material presented in support of the motion for a new trial is not newly discovered evidence because it was in existence and could have been found through the exercise of due diligence, the court also finds that the evidence would probably not result in defendant's acquittal if, in fact, he was granted a new trial. The record demonstrates beyond a reasonable doubt that defendant's restricted license was revoked nearly a month before he was stopped by the Fort Monroe base police. Although defendant did not attend the revocation hearing on February 24, 1998, the testimony of defendant and his wife clearly indicated that he had actual knowledge of the revocation hearing and the likelihood that defendant would lose his restricted license at the hearing. Defendant claims that he was scheduled to undergo a surgical procedure the day *after* the revocation hearing, and even went so far as to request a continuance from the court prior to the hearing. However, apparently neither defendant nor his wife subsequently contacted the court to determine whether the continuance was granted or what the outcome of the hearing was in the event the continuance was not

granted. The court finds that defendant knowingly and willfully failed to follow up on the results of the revocation hearing. In conjunction with the court's credibility determination at trial,[3] it is, therefore, beyond doubt that at the time he was stopped on Fort Monroe, Nicholson knew, *or should have known*, that his restricted license was revoked. The clarifications now presented to the court do not change this fact. Even if defendant did not have actual knowledge that his license was revoked, defendant's constructive knowledge is sufficient to sustain his conviction.

At trial, defendant argued that the government was required to show that he had actual knowledge that his restricted license was revoked before he could be found guilty of driving after being declared a habitual offender. Defendant's reliance on *Reed v. Commonwealth*, 15 Va.App. 467, 424 S.E.2d 718 (Va.App.1992), for this proposition, however, is misplaced. In *Reed*, the Virginia Court of Appeals held that a defendant must have actual personal knowledge of his status as a habitual offender before he can be convicted under Virginia Code § 46.2-357. As stated above, there is no dispute that defendant Nicholson was present at the trial where he was declared a habitual offender and knew of the results of that trial. This is evidenced not only by his direct admission to this fact, but also his previous convictions for driving after being declared a habitual offender and his application for a restricted license. Thus, defendant clearly satisfies all of the *Reed* requirements.

■ *Reed* does not stand, however, for the far broader proposition ascribed to it by defendant. *Reed* simply did not address the knowledge requirement of an individual whose restricted license is revoked. In fact, Virginia law is clear that even when an individual receives a restricted license, he maintains his habitual offender status and is still subject to prosecution under Virginia Code § 46.2-357 for driving after being declared a habitual offender. *Travis v. Commonwealth*, 20 Va.App. 410, 457 S.E.2d 420, 422 (Va.App. 1995). In *Travis*, the Court of Appeals of Virginia rejected defendant's argument that

---

**3.** *See supra* note 1.

a habitual offender who is given a restricted license under § 46.2–360(2) (authorizing circuit courts to issue restricted licenses under certain conditions) is not subject to prosecution under § 46.2–357. The court discussed the relationship between those two sections as follows:

> Code § 46.2–360(2) specifically states that any violation of driving privileges may lead to a modification of the court order or a subsequent revocation of the habitual offender's driver's license. The continuing authority of the court to modify or revoke the license belies appellant's assertion that his adjudication as an habitual offender was no longer valid. As the Commonwealth contends, the trial court granted a restricted license under subsection (2) of Code § 46.2–360, not subsection (1), the subsection granting a full restoration of driving privileges. Appellant's status as an habitual offender continued despite his limited driving privileges, and he was properly charged under Code § 46.2–357 because he operated a motor vehicle during times not authorized by the trial court.

*Id.*

In this case, as in *Travis*, Nicholson received his restricted license under § 46.2–360(2), and not § 46.2–360(1). Thus, defendant retained his habitual offender status. Furthermore, the excerpt from *Travis* makes it clear that the revocation of a restricted license is viewed very differently under Virginia law than the initial determination of habitual offender status. *Reed* required actual notice of habitual offender status in part because at the show cause hearing "the burden of proof remains with the Commonwealth and the judge must make an independent examination of the evidence to determine whether the person should be declared an habitual offender." *Reed,* 424 S.E.2d at 721. When the question is whether or not to revoke a restricted license, the Commonwealth's burden has been satisfied and the "independent examination" has already occurred. There is no question, in such a case, that the defendant is a habitual offender. Because the court has "continuing authority" to revoke a habitual offender's restricted license following a violation, *Travis,* 457 S.E.2d at 422, the procedural safeguards are not as stringent as the initial determination that an individual is a habitual offender. *Compare* Va. Code.Ann. § 46.2–360(2) (providing no procedure for the revocation of a restricted license) *with* Va.Code Ann. § 46.2–351.2 (requiring show cause summons to be issued when it appears that an individual may be a habitual offender within the meaning of Va. Code Ann. § 46.2–351; providing for show cause hearing not less than 120 days after date of summons).

Accordingly, contrary to defendant's argument, it appears to the court that Virginia law imposes no requirement that a defendant have actual knowledge that his restricted license was revoked before he can be found guilty of driving after being declared a habitual offender. *Cf. Travis,* 457 S.E.2d at 421–23 (affirming defendant's conviction for driving a motor vehicle after having been adjudicated an habitual offender despite the fact that defendant had a restricted license at the time of the offense). Thus, defendant has not demonstrated that the "newly discovered evidence," even if it is such, would result in acquittal at a new trial.

### III.  Conclusion

Three out of the five *Chavis* criteria are not met, and defendant's motion for a new trial is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

It is so **ORDERED.**