579 S.E.2d 699

**George Halcott NORMAN, III**

**v.**

**COMMONWEALTH of Virginia.**

**Record No. 1237–02–3.**

Court of Appeals of Virginia,
Salem.

May 6, 2003.

Jon Ian Davey, Danville, (Law Office of Jon I. Davey, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Present: BUMGARDNER, HUMPHREYS and CLEMENTS, JJ.

HUMPHREYS, Judge.

George Halcott Norman, III appeals his conviction, after a bench trial, for driving as an habitual offender, second or subsequent offense.[1] Norman contends the trial court erred in determining that he was an habitual offender because his driving privileges had been fully restored prior to his arrest on the charge. For the reasons that follow, we affirm the judgment of the trial court.

## I. Background

On August 14, 2001, Deputy Sheriff H.L. Gatewood, of the Pittsylvania County Sheriff's Department, spotted Norman's vehicle travelling east on Route 57. Because he had been

---

[1] Norman was also convicted of driving under the influence of alcohol, second offense within five years, possessing a firearm as a convicted felon and brandishing a firearm. Norman pleaded guilty to these charges and does not raise any issues as to these convictions on appeal.

given a B.O.L. ("be on the lookout") message for that car by the dispatcher, Deputy Gatewood stopped the car. When he approached the car, he observed that Norman was the sole occupant of the car. He asked Norman for identification, but Norman was unable to produce his driver's license. However, he told Gatewood that he had "a license at home and it was a piece of paper issued by the Court." Deputy Gatewood observed that Norman had a gun in the car, which was lying on the front floorboard, with the barrel pointed toward the driver's side door. He further observed that Norman was "severely intoxicated." Gatewood arrested Norman for drunk driving and brandishing a firearm.

Gatewood checked Norman's social security number through his dispatcher and was told that Norman's driver's license was either "suspended or revoked." He then proceeded to Norman's home to obtain Norman's license. Norman's girlfriend gave Deputy Gatewood a "green sheet of paper," stating that Norman's privilege to drive was restricted pursuant to a May 4, 2001 court order.

When he arrived at the police station, Deputy Gatewood ran Norman's criminal history and learned that he was a convicted felon. He also ran Norman's driver's license and found that he was indeed, driving on a restricted license. Norman was then additionally charged with driving as an habitual offender, second or subsequent offense, and possessing a firearm as a convicted felon.

At trial, the Commonwealth and Norman introduced several documents pertaining to the habitual offender charge. The documents are summarized as follows:

1. An October 13, 1989 order from the Circuit Court of Pittsylvania County, entering judgment on Norman's guilty plea of operating a motor vehicle after having been declared an habitual offender. The order directed that Norman be sentenced on the conviction to two years in prison, but suspended one year of the sentence on the conditions of good behavior and supervised probation.

2. A December 20, 1999 order from the Circuit Court of Pittsylvania County on Norman's petition "for restoration of his privilege to operate a motor vehicle in Virginia," which had been suspended since April 12, 1984. The order directed as follows:

Accordingly, the prayer of the petition should be granted, subject to the conditions set forth below ... it is ORDERED that pursuant to § 46.2–360 of the Virginia Code Annotated the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to George Halcott Norman, III.

It is further ORDERED that this is not a license or privilege to drive in itself; that ... petitioner is referred to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of this Order; that the petitioner shall not possess or use alcohol, alcoholic beverages or drugs ...; that should petitioner incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently.

The object of this proceeding having been accomplished, it is ORDERED that the same be, and it is hereby, removed from the docket and place[d] among the ended of cases.

3. An order dated May 4, 2001, from the Circuit Court of Pittsylvania County finding that Norman "violated the terms of the Court's Order of December 20, 1999," and granting Norman a restricted license to drive to work and to medical providers on the condition that he be monitored by Dan River ASAP for twelve months. The order directed that "should [Norman] have any violations of law during the period of supervision," his license would be "permanently" revoked.

4. An order issued by the Department of Motor Vehicles, dated May 7, 2001, stating that Norman sought "a restricted license after having been declared an habitual offender or having had [his] license revoked pursuant to Virginia Code § 46.2–391(B) three years or more prior to this date," and

giving Norman a one-year restricted license, pursuant to the May 4, 2001 court order, authorizing him to drive to and from work, to and from the Dan River ASAP office, and when medically necessary.

Norman argued that despite the May 4, 2001 order, restricting his driving privileges, the December 20, 1999 order had fully restored his driving privileges and, thus, he could no longer be considered an habitual offender for the purpose of the charge at issue. The Commonwealth responded that the December 20, 1999 order did not fully restore Norman's privileges, but only restored them on a conditional basis. The Commonwealth further contended that the conditional restoration was revoked by the circuit court when Norman violated the terms of the December 20, 1999 order and was issued a restricted license on May 7, 2001.

The trial court agreed with the Commonwealth, finding that by signing the DMV order of May 7, 2001, Norman acknowledged that his status as an habitual offender remained in effect, despite the purported restoration of his driving privileges in the December 20, 1999 order. The court then found him guilty of the habitual offender charge and sentenced him to serve two years in prison on that conviction.

## II. Analysis

■ On appeal, Norman contends that the trial court erred in finding the evidence sufficient to support his conviction for operating a motor vehicle after having been declared an habitual offender. As he argued below, Norman maintains that the circuit court fully restored his driving privileges in its December 20, 1999 order and that, therefore, he was no longer an habitual offender at the time of the offense at issue. We disagree.

■ We first note that the standard for appellate review of criminal convictions is well established. "When a defendant challenges the sufficiency of the evidence, we are required to review the evidence 'in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deduc-

ible therefrom.'" *Collins v. Commonwealth,* 13 Va.App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). "The conviction will not be reversed unless it is plainly wrong or without evidence to support it." *Id.; see also* Code § 8.01–680.

Code § 46.2–357(A) defines the felony offense of driving after being declared an habitual offender. "In pertinent part, Code § 46.2–357(A) states that '[i]t shall be unlawful for any person to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect.'" *Varga v. Commonwealth,* 260 Va. 547, 550, 536 S.E.2d 711, 713 (2000) (quoting Code § 46.2–357(A)).

Code § 46.2–360 permits any person declared an habitual offender to petition the court for restoration of his or her driving privileges, providing as follows in relevant part:

Any person who has been found to be an habitual offender where the determination or adjudication was based in part and dependent on a conviction as set out in subdivision 1 b of former § 46.2–351, may petition the court in which he was found to be an habitual offender, or the circuit court in the political subdivision in which he then resides to:

1. Restore his privilege to drive a motor vehicle in the Commonwealth, provided that five years have elapsed from the date of the final order of a court entered under this article, or if no such order was entered then the notice of the determination by the Commissioner. On such petition, and for good cause shown, *the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe.* . . .

2. Issue a restricted permit to authorize such person to drive a motor vehicle in the Commonwealth in the course of his employment, to and from his home to the place of his employment or such other medically necessary travel as the court deems necessary and proper upon written verification

of need by a licensed physician, provided that three years have elapsed from the date of the final order, or if no such order was entered then the notice of the determination by the Commissioner....

(Emphasis added).

Reading the habitual offender statutes *in pari materia*, it is clear that once a person is declared an habitual offender by order of a trial court, he retains that status and loses his driving privilege for so long as the order is effective. Thus, ... the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions.

*Varga*, 260 Va. at 551, 536 S.E.2d at 714.

Code § 46.2–360 is one of the code sections that allows a court to remove an individual's status as an habitual offender and to restore his or her privilege to drive. Indeed, that particular code section permits the court to: 1) fully restore an individual's driving privileges; 2) restore an individual's driving privileges on certain conditions; or 3) grant an individual a restricted driving privilege, allowing the individual to drive only to and from work, when medically necessary, or to where the trial court otherwise deems necessary. *See Travis v. Commonwealth*, 20 Va.App. 410, 415, 457 S.E.2d 420, 422 (1995) (noting that relief under Code § 46.2–360(2) provides for a restricted license, whereas Code § 46.2–360(1) provides for "a full restoration of driving privileges"); *see also* Code § 46.2–360(1) and (2).

The parties do not dispute that here, in its December 20, 1999 order, the trial court granted Norman a "restoration" of his driving privileges, as opposed to a "restricted" privilege to drive. However, although the order appears somewhat inartfully written, when read as a whole, the trial court's order makes it clear that it granted Norman's petition for restoration, subject to certain conditions contained in the order. Specifically, the order required Norman to "present himself

and [the] Order to the Department of Motor Vehicles for such administrative proceedings and payment of fees and costs as may be required," to present himself "to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of [the] Order," and to refrain from possessing or using "alcohol, alcoholic beverages or drugs." The order further provided that if Norman were to "incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to [Norman] to show cause why his privilege to drive should not be suspended permanently." [2] Thus, the court's actions, most significantly its conditional restoration of Norman's driving privileges and its continuing retention of authority over Norman's privilege to drive, belie Norman's assertion that his adjudication as an habitual offender was no longer valid pursuant to the December 20, 1999 order. *See Travis*, 20 Va.App. at 415, 457 S.E.2d at 422.[3]

Moreover, as the trial court correctly noted, Norman was aware that he retained habitual offender status when the circuit court found that he violated the provisions of the December 20, 1999 order and, by its order of May 4, 2001,

---

**2.** Since the issue is not before us, we need not consider here the authority of the trial court to "permanently" suspend the privilege to drive.

**3.** The dissent's contrary interpretation of the statute renders the plain and unambiguous language of the statute meaningless. Indeed, the dissent recognizes that a conditional restoration is available pursuant to the terms of the statute. Nevertheless, in its analysis, the dissent ignores the term "conditional" and finds that *any* "restoration" of an individual's privilege to drive necessarily operates to remove the individual's status as an habitual offender and *fully* "restores" their privilege to drive, despite any statutorily permitted conditions imposed by a trial court. *See Shelor Motor Co. v. Miller*, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001) ("When the legislature has used words of a plain and definite meaning, courts cannot accord those words a meaning that amounts to holding that the legislature did not mean what it actually expressed."); *see also Hubbard v. Henrico Ltd. Partnership*, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (noting the "settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary").

revoked his "full" driving privileges, granting him instead, restricted driving privileges. Indeed, when he signed the resulting Restricted Driver's License Order, on May 7, 2001, Norman acknowledged that he was granted the restricted license privilege "after having been adjudicated/determined to be an habitual offender."

Accordingly, we hold that the trial court properly found the evidence sufficient to establish Norman's status as an habitual offender at the time of the offense, and we affirm the judgment of the trial court.

*Affirmed.*

CLEMENTS, J., dissenting.

I respectfully dissent from the majority's opinion. The dispositive issue in this case is whether the trial court's December 20, 1999 order restoring Norman's driving privileges terminated his status as an habitual offender. The majority concludes that, because the December 20, 1999 order provided, pursuant to Code § 46.2–360, for the conditional, rather than full, restoration of Norman's driving privileges, that order did not terminate Norman's status as an habitual offender. I disagree with the majority's premise and conclusion.

As the majority notes, "the habitual offender status of [a] person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored." *Varga v. Commonwealth,* 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000). Here, as reflected in the trial court's December 20, 1999 order, Norman petitioned the court "for restoration of his privilege to operate a motor vehicle in Virginia." The trial court, finding that Norman's petition to restore his driving privileges "should be granted, subject to the conditions set forth" in the order, ordered that "pursuant to [Code] § 46.2–360 ... the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to" Norman. The trial court further ordered that Norman (1) report to the Depart-

ment of Motor Vehicles before driving "for such administrative proceedings and payment[s] . . . as may be required," (2) be monitored and supervised by "Dan River ASAP" for one year, and (3) "not possess or use alcohol . . . or drugs." The court further stated that, should Norman "incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently."

Code § 46.2–360(1), which pertains to petitions to restore driving privileges,[4] provides, in pertinent part, that the court may, in granting a petitioner's request for restoration of his or her driving privileges, "restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe" or, "in lieu of restoring the person's privilege to drive, authorize the issuance of a restricted license."

> Under basic rules of statutory construction, we examine a statute in its entirety, rather than by isolating particular words or phrases. When the language in a statute is clear and unambiguous, we are bound by the plain meaning of that language. We must determine the General Assembly's intent from the words appearing in the statute, unless a literal construction of the statute would yield an absurd result.

*Cummings v. Fulghum*, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001) (citations omitted).

Applying these principles, I find that the legislature clearly intended that a court acting on a petition for restoration of driving privileges be permitted to take one of three actions under Code § 46.2–360(1):(1) deny the petition; (2) restore the person's driving privileges, with or without conditions; or (3)

---

4. In reciting what it says is the "relevant part" of Code § 46.2–360, the majority includes subsection 2 of that statute in its recitation. That subsection, however, relates only to petitions for the issuance of a restricted license. Thus, because Norman's petition was for restoration of his privilege to drive rather than for a restricted license, Code § 46.2–360(2) is inapplicable in this case.

grant a restricted license. The statute draws no distinction between a "full restoration" and a "conditional restoration." Hence, an individual's privilege to drive is either restored or not restored under Code § 46.2–360(1).

Citing *Travis v. Commonwealth*, 20 Va.App. 410, 415, 457 S.E.2d 420, 422 (1995), Norman acknowledges in his appellate brief that one who has been granted only a restricted license "retains his habitual offender status." As the majority points out, however, it is undisputed in this case that the trial court did not grant Norman a restricted license but granted him a "restoration" of his privilege to drive.

Accordingly, the conclusion must be reached that, in entering the December 20, 1999 order, the trial court restored Norman's driving privileges. Based on that order, the Department of Motor Vehicles would have undoubtedly issued Norman a full, unrestricted operator's license. The fact that the court prescribed certain conditions in restoring Norman's privilege to drive and, thus, retained authority to enforce those conditions does not alter the conclusion that Norman's privilege to drive was restored. Indeed, given that the court cannot logically suspend what does not exist, the trial court's admonition that it might suspend Norman's "privilege to drive" permanently if he failed to comply with the court's conditions only buttresses the conclusion that the court intended to restore Norman's driving privileges on December 20, 1999.

I would hold, therefore, that the trial court's order of December 20, 1999, terminated Norman's status as an habitual offender on that date. *See Varga*, 260 Va. at 552, 536 S.E.2d at 714 (holding that one's habitual offender status "remains in force until that person actually has his privilege to drive restored"). I would also hold that, because no court declared him an habitual offender subsequent to that date, Norman was not an habitual offender when he drove on August 14, 2001,[5] and the trial court erred in finding him so.

---

**5.** I believe the majority's reliance on the trial court's finding that "Norman was aware that he retained habitual offender status" after

For these reasons, I would reverse Norman's conviction for driving as an habitual offender, second or subsequent offense.

December 20, 1999, is misplaced. Norman's perceptions and beliefs have no bearing on the issue of whether the trial court's December 20, 1999 order terminated his status as an habitual offender, the resolution of which is purely a matter of law.