𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BRANCH v. BRANCH.

March 18, 1926.

1. CONTEMPT—*Quasi Criminal Proceeding—On Appeal Defendant Stands as on a Demurrer to the Evidence.*—While the proceeding for contempt is *quasi* criminal, and the guilt of the defendant must be shown beyond a reasonable doubt, yet in the Supreme Court of Appeals he stands practically as on a demurrer to the evidence as in other criminal cases.

2. CONTEMPT—*Refusal to pay Alimony—Evidence in Divorce Suit on Rule Against Defendant for Failure to Pay Alimony.*—On a rule against defendant to show cause why he should not be dealt with for his contempt in failing to pay alimony decreed against him in a divorce suit, the evidence taken in the divorce suit upon which the decree for alimony was based, where it appeared that the defendant had due notice of the time and place of taking such evidence, was rightly considered by the trial court on the hearing of defendant's motion to reduce the alimony.

3. ALIMONY—*Contempt Proceeding—Presumption and Burden of Proof—Decree Presumed Correct.*—On a rule against defendant to show cause why he should not be dealt with for his contempt in failing to pay alimony decreed against him, the presumption is that the decree for alimony was right and the burden was on the defendant to show that it was wrong.

4. JUDICIAL NOTICE—*Matters of Common Knowledge—Alimony—Price of Day Labor in Certain Counties—Judicial Notice that the Cost of Labor at a Certain Day Was Very High—Case at Bar.*—On a rule against defendant to show cause why he should not be held in contempt for failure to pay alimony of $200.00 a year, decreed against him, while the Supreme Court of Appeals cannot take judicial notice of the price per day of farm labor in Buckingham county, but what everybody knows the court knows, and everybody knows that the cost of day labor from October, 1924, to May, 1925, was high, and that a young, active, healthy man, from twenty-eight to thirty years of age, could have made more than double sixty-four cents a day during that period.

5. ALIMONY—*Failure to Pay—Contempt—Case at Bar.*—In the instant case, a rule against defendant for failure to pay alimony, the defend-

ant had not only not paid all of the alimony decreed, he had not paid any part of it and had shown no effort or disposition to pay it. His physical health and strength constituted a valuable asset, which would have furnished a means of payment, but he had not applied it. The law imposed this obligation upon him, and he should have discharged it. The evidence satisfied the Supreme Court of Appeals that the failure to pay the alimony decreed was not from inability but from unwillingness to pay.

*Held:* That the judgment of the lower court finding defendant in contempt must be upheld.

6. ALIMONY—*Contempt—Son's Duty to His Mother and His Family.*—On a rule against defendant for contempt, he plead his duty to his aged mother as excuse for his failure to pay the alimony decreed against him.

*Held:* That while the duty of the son to his mother is not to be minimized, yet his first duty is the support of those for whose existence he is responsible.

7. IMPRISONMENT FOR DEBT—*Contempt—Failure to Pay Alimony.*—A decree for alimony is essentially different from an ordinary debt or judgment for money. It is an allowance in the nature of a partition of the husband's property, of which the wife is entitled to a reasonable share for her maintenance. It is an order compelling a husband to support his wife, and this is a public as well as marital duty—a moral as well as a legal obligation. The liability is not based upon a contract to pay money, but upon the refusal to perform a duty. The imprisonment is not ordered simply to enforce the payment of the money, but to punish for the wilful disobedience of a proper order of a court of competent jurisdiction.

8. CONTEMPT—*Power of Courts Over Decrees—Punishment for Contempt.*— Courts are invested with the power and charged with the duty of enforcing their decrees. Such decrees are the mandates of the law, and courts must have the power of enforcing them, if organized society is to be maintained. A judge in vindicating the authority of the court over which he presides is discharging a solemn duty in his official character, and is not engaged in a personal and private controversy.

Error to a judgment of the Circuit Court of Buckingham county.

*Affirmed.*

The opinion states the case.

*John D. Easley,* for the plaintiff in error.

*Hubard & Boatwright,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

Fletcher Branch was married February 18, 1920. Two children were born of the marriage, one on March 1, 1920, and the other on May 4, 1922. In 1922 he struck his wife, drove her from his home and told her never to return. Since that time she has lived separate and apart from him, and has had custody of the two children. In the fall of 1922 he was brought before the Circuit Court of Buckingham county for desertion and nonsupport of his wife and children and compelled to enter into bond with surety to pay $200 per annum towards such support. This sum was paid. In 1923, he was required by said court to enter into a similar bond for support for another year. In 1924, the wife sued for divorce and alimony, and at the October term, 1924, of the Circuit Court of Buckingham county, the divorce was granted, and a decree for alimony granted for $200 per year, payable monthly. He paid nothing on the decree for alimony, and in February, 1925, a rule was issued against him, returnable to the March term to show cause "why he should not be dealt with for his contempt." Hearing on the rule was continued until the May term of the court, when the judgment now complained of was entered, directing that the said Fletcher Branch be "confined in jail for fiifteen days or as long thereafter until the said alimony and the costs of these proceedings be paid."

At the hearing on the rule, the defendant filed no answer to the rule, but moved the court to reduce the amount of yearly alimony, and in support of his motion offered the following testimony:

"Fletcher B. Branch, the defendant, testified that he had been totally unable to pay the sum awarded

the plaintiff by said decree in the rule mentioned, and had not at any time been able to pay the same or any part thereof; that he owned no property; that he knew no trade, business or craft; that he had done nothing but farm all of his life; that he lived with his mother who was about eighty years of age, on a very poor farm of about sixty (60) acres; that said farm had been owned by his father, who had died intestate, leaving surviving his widow, the mother of witness, and eight children; that his mother had no one else to live with her; that his mother owned the teams, tools and farming implements, and got two-thirds of what was raised on said sixty (60) acre farm; that in addition to working said farm of sixty (60) acres, he rented some James river low ground and paid as rent therefor one-third of the crop to the landowner and one-third to his mother for the use of her team and farming implements and got one-third of the crop for his labor; that during the year of 1924 high water destroyed all of his low ground crops and that he raised about twenty barrels of corn on some highlands, of which he got one-third as his part and that his part of the tobacco crop raised on his mother's farm was ninety-eight dollars ($98.00); and that the foregoing was all the crops he got during 1924; that he had tried to get other work to do but was unable to do so; that he desired and tried to comply with the decree of the court for the payment of said sum, and that his failure to do so was due solely to his inability so to do; that he had borrowed from his friend, H. D. Omohundro, Jr. two hundred dollars ($200.00) to pay to plaintiff for her support and the support of his and plaintiff's children in October, 1923, and produced in evidence a cancelled check of H. D. Omohundro, Jr., for said sum of two hundred dollars ($200.00), dated October

20, 1923, payable to Mrs. F. S. Branch, and marked 'For F. B. Branch' on the face of said check, and endorsed on the back of said check as follows: 'Pay to F. R. Moon & Co., Mrs. F. B. Branch;' that he had been unable to pay this loan in full though he had repaid about one hundred and fifty dollars ($150.00) thereon; that he could get a job he supposed paying thirty dollars ($30.00) or forty dollars ($40.00) per month, but produced a contract for the rental of land for the year 1925; that he was twenty-nine years old, strong and in good health and physically able to work.

"H. D. Omohundro, Jr., testified that he knew the defendant well, and lived near him, and knew his financial condition; that the defendant had no property and that he had lent the defendant two hundred dollars to pay the latter's wife in October, 1923, as testified by defendant, and only about one hundred and fifty dollars of this loan had been repaid witness; that the farm on which defendant's mother lived was very poor and the whole place worth possibly five hundred or six hundred dollars; that defendant's low ground crops had been destroyed by high water in 1924; and that the defendant had been very hard up though he worked hard and got jobs at hauling and other work when he could; that witness had, in addition to the loan of two hundred dollars above mentioned, made some small loans of five dollars or ten dollars from time to time to relieve his necessitous circumstances; that farm labor was plentiful and cheap in his neighborhood, the prevailing price being one dollar and twenty-five cents per day and board."

In support of the rule the wife testified as follows: "That she had received nothing from defendant since October, 1924; that she lived with her father and

mother who were poor, old and unable to work; that her two children were five and three years old, respectively, and required her attention so that she was unable to get work for support of herself and children; that since October she had been buying on credit from F. R. Moon such things as she needed to live on, and that she did not know the amount of such purchases and could not give them even approximately."

The defendant entered no appearance and took no testimony in the divorce suit. It appears from the pleadings and evidence for the complainant that he is a strong, robust young man, about twenty-eight years of age, owns a one-eighth interest in a tract of land of fifty or sixty acres, and owns horses, cows and farming implements. The amount of the alimony was sixteen dollars and sixty-six and two-third cents per month, or about sixty-four cents a day.

[1, 2] While the proceedings for contempt is *quasi* criminal, and the guilt of the defendant must be shown beyond a reasonable doubt, yet in this court he stands practically as on a demurrer to the evidence as in other criminal cases. Furthermore, as the rule was made in the divorce suit where the evidence was taken upon which the decree for alimony was based, and it appears that the defendant had due notice of the time and place of taking such evidence, the evidence so taken was rightly considered by the trial court on the hearing of that motion to reduce the alimony.

[3] The defendant was twice put under bond to pay $200 a year for the support of his wife and children, and on each occasion had the opportunity to be heard on his ability to pay. The decree for alimony simply continued the amount. Here again he had the opportunity of contesting his ability to pay, but failed

to do so.  He stated in his testimony that "during the year 1924 high water destroyed all of his low ground crops," but does not state what they were, or the value thereof.   The decree for alimony was not made till the October term, 1924, of the court, and he could not have had any crop standing at that time of the year except corn.   So that the decided probability is that the "high water" came before the decree for alimony was entered, and he should have made that defense before the decree was entered.   The presumption is that the decree for alimony was right, and the burden was on the defendant to show that it was wrong.  ·

[4, 5, 6] This court cannot take judicial notice of the price per day of farm labor in Buckingham county, but what everybody knows the court knows, and everybody knows that the cost of day labor from October, 1924, to May, 1925, was high, and that a young, active, healthy man, from twenty-eight to thirty years of age, could have made more than double sixty-four cents a day during that period.   The defendant has not only not paid all of the alimony decreed, he has not paid any part of it.   He has shown no effort or disposition to pay.   His physical health and strength constituted a valuable asset, which would have furnished a means of payment, but he has not applied it. The law imposed this obligation upon him, and he should have discharged it.   While we would not minimize the duty of a son to his mother, yet his first duty was the support of those for whose existence he was responsible.   The record furnishes abundant evidence to support the judgment of the trial court.   We are satisfied that the failure to pay the alimony decreed was not from inability but unwillingness to pay, and this is contumacy.

[7] In *West* v. *West*, 126 Va. 696, 699-700, 101 S. E.

876, 877, it is said: "It has sometimes been claimed that because imprisonment for debt has been abolished, therefore, a court of equity cannot commit to jail for failure to pay alimony. The true doctrine, however, is that a decree for alimony is essentially different from an ordinary debt or judgment for money. It is an allowance in the nature of a partition of the husband's property, of which the wife is entitled to a reasonable share for her maintenance. It is an order compelling a husband to support his wife, and this is a public as well as marital duty—a moral as well as a legal obligation. The liability is not based upon a contract to pay money, but upon the refusal to perform a duty. The imprisonment is not ordered simply to enforce the payment of the money, but to punish for the wilful disobedience of a proper order of a court of competent jurisdiction. *Messervy* v. *Messervy*, 85 S. C. 189, 67 S. E. 130, 30 L. R. A. (N. S.) 1001, 137 Am. St. Rep. 873; *Smith* v. *Smith*, 81 W. Va. 761, [S. A. L. R. 1149] 95 S. E. 199; *Staples* v. *Staples*, 87 Wis. 592, 58 N. W. 1036, 24 L. R. A. 433, note 1 R. C. L., p. 960; *In re Popejoy*, 26 Col. 32, 55 Pac. 1083, 77 Am. St. Rep. 222; *Bronk* v. *State*, 43 Fla. 461, 31 So. 248, 99 Am. St. Rep. 119; *Barclay* v. *Barclay*, 184 Ill. 375, 56 N. E. 636, 51 L. R. A. 351; *State* v. *Cook*, 66 Ohio St. 566, 64 N. E. 567, 58 L. R. A. 625; *In re Cave*, 26 Wash. 213, 66 Pac. 425, 90 Am. St. Rep. 736.

"While the remedy, imprisonment, is severe and harsh, and, therefore, should not be enforced except where it appears that the defendant is contumacious, still where this does appear there should be no hesitation in imposing the penalty."

[8] Courts are invested with the power and charged with the duty of enforcing their decrees. Such decrees

are the mandates of the law, and courts must have the power of enforcing them, if organized society is to be maintained. "A judge, therefore, in vindicating the dignity and authority of the court over which he presides is discharging a solemn duty in his official character, and is not engaged in a personal and private controversy." *Carter* v. *Commonwealth*, 96 Va. 791, 812, 32 S. E. 780, 784 (45 L. R. A. 310); *State* v. *Frew*, 24 W. Va. 477, 49 Am. Rep. 257.

We find no error in the judgment of the trial court and it is accordingly affirmed.

*Affirmed.*