# Wytheville

### HENRY DORSEY LINDSEY v. CECELIA McKENNA LINDSEY.

#### June 16, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*Harrison C. Eacho* and *Norman L. Flippen,* for the plaintiff in error.

*Lovenstein & Lovenstein,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a contempt proceeding brought to enforce payment of support money decreed in a divorce suit. Mrs. Lindsey, the plaintiff below, in November, 1930, brought suit for divorce on the grounds of extreme cruelty and constructive desertion. To support herself and her three months old child she asked for some temporary allowance. That motion, after notice, was heard on November 20, 1930. She testified that she and her child were living in the home of a friend; that she had no independent means and that fifteen dollars

a week was absolutely necessary to sustain herself and it. Her husband, Henry Dorsey Lindsey, hereafter styled defendant, appeared and testified. He said that he had no property, other than a lunch room in the city of Richmond already heavily indebted for supplies purchased; that he was doing business at a loss and was able to continue to operate only through the generosity of an uncle, John B. Wood, who had already lent him thousands of dollars; that he managed this business himself and gave to it his entire attention and in its conduct employed five persons, paying one $25.00 a week; and that because the business was a losing venture he did not feel justified in withdrawing money from it.

After hearing, the trial court, by decree of date November 20, 1930, ordered him to pay to his wife for the support of herself and child, *pendente lite*, $15.00 a week. On December 18, 1930, he filed his answer and cross-bill in which he denied all material allegations of the bill and charged that the plaintiff had deserted him. He, too, sought a divorce. On the issue thus made no evidence has been taken, and neither party has asked for any order speeding the cause.

Payment of this weekly allowance was not made with regularity and there were a number of informal conferences, some in court and some in chambers. Plaintiff complained that the defendant was in arrears, he would excuse his default by saying that his business was not prosperous and that to keep it going he had to turn over to creditors and employees all of his cash receipts, the court would admonish him as to his duty in the premises and the defendant would give assurances to it that there would be no cause for future complaint.

On August 5, 1931, the parties by agreement appeared before the court, at which time the defendant was eight weeks in arrears. He then said he had made an arrangement with his uncle whereby he was to be advanced sums necessary to pay off creditors of the business; that it was to be incorpo-

rated with him as business manager at a salary of $20.00 a week, and that there would be coming to him from that source, on August 8, 1931, $40.00 out of which he would then pay $30.00 on account. This payment was not made and at the instance of the plaintiff a rule to show cause issued and was heard on August 14, 1931. At that hearing plaintiff introduced no evidence.

The defendant admitted that he was in arrears, but said that he was utterly without means; that his uncle who controlled the restaurant business had refused to let him draw anything by way of salary and that he had without avail made strenuous efforts to borrow money to comply with his promise. He confessed that he was reminded by his counsel of his promise to the court, and that his statement then made that $30.00 was being sent by a messenger, was untrue. He further admitted that he mailed to his wife on that day a worthless check for $15.00, on which he had written this unwarranted memorandum:

"Relief of inmates
1617 Lower Street."

He also testified that the condition of his back was such that he would at times have to stop work and rest for a day or two.

The trial judge in a written opinion, filed with and made a part of the record, said:

"The defendant has appeared before the court on as many as six occasions and the court has had ample opportunity to observe from his testimony and his conduct and bearing his attitude towards the plaintiff, the court and the world in general. Viewing the conduct of the defendant in the light of all the circumstances, I have arrived at the very firm conviction that he is to be classified in that category of persons who will recognize and submit to no authority which conflicts with their own wilful purpose."

For failure to comply with the court's decree the defend-

ant has been sentenced to fifteen days' confinement in jail. That judgment is now before us on a writ of error.

For disobedience of its decree a court may inflict summary punishments. Code, section 4521; *Forbes* v. *State Council*, 107 Va. 853, 60 S. E. 81. Formerly such action was final. Code of 1887, section 4053. A writ of error will now lie. Code 1919, section 4932.

On a rule to show cause in an effort to enforce the payment of alimony not only testimony then introduced is to be considered, but the court may also look to that duly taken in the suit itself. *Branch* v. *Branch*, 144 Va. 244, 132 S. E. 303. The rule is but ancillary to and in support of the suit and its decrees, and so we are not concerned with section 8, article 1, of our State Constitution, which in criminal prosecutions gives to the accused the right to be confronted by witnesses. It is true that contempt proceedings are sometimes *quasi* criminal, but whatever be their nature the defendant cannot ask more than to be present at the taking of evidence used against him.

It is also contended that since this is a criminal prosecution guilt must be proven beyond a reasonable doubt. We need not linger over this contention. Nonpayment is admitted. The defendant by way of excuse claims insolvency. The trial court was satisfied as to its insufficiency and so this claim is before us practically as on a demurrer to the evidence. *Branch* v. *Branch, supra.*

It is argued that the opinion of the trial court is no part of the record. *Proprio vigore* it is not, but it may be made a part of it.

In *Stover* v. *Stover*, 60 W. Va. 285, 54 S. E. 350, it is said: "It is commendable in the judge of a circuit court to file in a cause his written opinion therein, and it is not reversible error to make the same a part of the record in the case." Syllabus by the court.

In *Jackson* v. *Valley Tie and Lumber Co.*, 108 Va. 714,

62 S. E. 964, 965, a detailed statement of sundry incidents and their sequence was set out in the final decree. Complaint was made of this procedure. The court said: " * * * we are unable to appreciate the force of the contention that this method of stating the reasons for the court's decision is in violation of established rules of equity practice. The court might have, with the utmost propriety, set out its reasons for the decision rendered in a written opinion filed in the record and made a part of the decree carrying out the decision, and there is no conceivable reason why the grounds for the court's ruling should not be recited in its decree."

That is to say we have held that all of this might be set out in the decree itself, or in an opinion which may be made part of the decree or of the record. In the instant case the opinion is in terms made a part of the record just as was done in *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157.

██ Of course, such an opinion is no substitute for evidence, and statements in it of facts as proven, which are, not supported by it, have no probative value. *Clark* v. *Milens* (C. C. A.) 32 Fed. (2d) page 1004. These opinions are, however, often exceedingly useful and frequently serve to bring to our attention incidents of importance which would otherwise not be noted in the record, and which could not readily be made to appear, even by bills of exception. We approve the practice.

██ The trial court had the right to consider all that had occurred in the cause prior to its hearing on the rule, and that it did consider evidence theretofore taken specifically appears in certificate of exceptions numbered 3. That is to say, defendant has not been taken by surprise and it was his privilege to bring before us all testimony which the court could, and did, consider. That there was such evidence is concluded by the statement written into the opinion, and, as we have seen, by said certificate number 3.

██ This then is the situation. We have a decree which rests in part at least upon evidence not before us, but which might have been brought before us by one who charges that it does not in fact support the decree. The judgment of the trial court is presumed to be right and must stand until reversible error has been shown. That burden rests upon the defendant. In these circumstances he has no standing at all unless it be that the court's recitation of what had been done and proven together with testimony taken at the rule and properly preserved, sustains him, and so it is to his interest that we should examine this opinion. Without it he is out of court.

██ Inability to pay because of poverty or insolvency is an adequate excuse. (*Camden* v. *Virginia Safe Dep. & Trust Corp.*, 115 Va. 20, 78 S. E. 596), but unwillingness is not a substitute for inability.

██ The evidence offered to defeat the allowance when first made is quite similar to that introduced at the hearing on the rule. The defendant protested his insolvency, but it appeared that he was running a business of some magni-. tude. There were five employees, one of whom was paid $100.00 a month. The court, very justly, reached the conclusion that the failure of this business to make money was an insufficient excuse. That is now the common lot of many ventures, and if accepted will amount to a moratorium on alimony in general. The situation was not sufficiently desperate to close down the enterprise and so this lunch room continued to do business, certainly until the hearing of the rule. When enforcement of payment was attempted he testified that his uncle had refused to pay him anything, although there is nothing to show that conditions had changed from the time when payment was promised. In any event, this plaintiff continued to serve as manager for this lunch room after he had been notified that his pay for such services was at an end. Utterly insolvent, he has

been able to retain distinguished counsel and to prosecute, not *in forma pauperis*, an appeal to this court, with that uncle as his surety who has refused to pay him for his work. This, coupled with his conduct through all the course of litigation, led the court to believe that it had to deal with wilful disobedience.

This case in some of its aspects is not unlike that of *Branch* v. *Branch*, *supra*. The allowance is greater than in the *Branch Case* and Branch was in better physical condition, but Branch had to support his aged mother. Lindsey has no such obligation resting upon him. Branch worked upon a small and impoverished farm. Lindsey was the manager of a business which at least was maintained as a going concern, and his services, according to the judgment of his uncle, were worth $20.00 a week.

It is unnecessary to enlarge upon the obligations of a man to support his baby child, and if his wife was at fault he has had time not availed of to show that fact to the court.

We find no error in the judgment of the trial court and it is accordingly affirmed.

*Affirmed.*