COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner, Frank,
           Humphreys, Clements, Felton and Kelsey
Argued at Richmond, Virginia


GEORGE HALCOTT NORMAN, III

                                                        OPINION BY
v.        Record No. 1237-02-3            JUDGE JEAN HARRISON CLEMENTS
                                                  NOVEMBER 4, 2003
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
B. A. Davis, III, Judge Designate

Jon Ian Davey (Law Office of Jon I. Davey, on brief), for appellant.

John H. McLees, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General; H. Elizabeth Shaffer, Assistant Attorney
General, on brief), for appellee.


       George Halcott Norman, III, was convicted in a bench trial of driving as an habitual

offender, second or subsequent offense, in violation of Code § 46.2-357.[1]   On appeal, he

contends the trial court erred in determining he was an habitual offender because his driving

privilege had been fully restored prior to his arrest on the charge.  On May 6, 2003, a divided

panel of this Court affirmed Norman's conviction, holding that the evidence was sufficient to

establish Norman's status as an habitual offender because it demonstrated his driving privilege

had only been conditionally, rather than fully, restored prior to the offense.  Norman v.

Commonwealth, 40 Va. App. 496, 579 S.E.2d 699 (2003).  On June 17, 2003, we granted

_____

       [1] Norman was also convicted of driving under the influence of alcohol, second offense
within five years, possessing a firearm as a convicted felon, and brandishing a firearm.  Norman
pled guilty to these charges and does not raise any issues as to these convictions on appeal.

Norman's petition for a rehearing en banc, stayed the mandate of the panel decision, and reinstated the appeal. Upon rehearing en banc, we reverse the conviction and dismiss the indictment.

## I. BACKGROUND

On August 14, 2001, Deputy Sheriff H.L. Gatewood, of the Pittsylvania County Sheriff's Office, spotted Norman's car travelling east on Route 57. Having received a notice from dispatch to be on the lookout for that car, Gatewood stopped the car. When he approached the car, Gatewood asked Norman for identification, but Norman was unable to produce his driver's license. Norman told Gatewood he had "a license at home and it was a piece of paper issued by the Court." Gatewood observed that Norman, who was the sole occupant of the car, had a gun in the car. He further observed that Norman was "severely intoxicated." Gatewood arrested Norman for drunk driving and brandishing a firearm.

Deputy Gatewood checked Norman's social security number through his dispatcher and was told that Norman's driver's license was either "suspended or revoked." He then proceeded to Norman's home to obtain Norman's license. Norman's girlfriend gave Gatewood a "green sheet of paper" stating that Norman's privilege to drive was restricted pursuant to a May 4, 2001 court order.

When he arrived at the police station, Deputy Gatewood ran Norman's criminal history and learned that he was a convicted felon. He also ran Norman's driver's license and found that he was indeed driving on a restricted license. Norman was then additionally charged with driving as an habitual offender, second or subsequent offense, and possessing a firearm as a convicted felon.

At trial, the Commonwealth and Norman introduced several documents pertaining to the habitual offender charge, which can be summarized as follows:

1. An October 13, 1989 order from the Circuit Court of Pittsylvania County, entering judgment on Norman's guilty plea of operating a motor vehicle after having been declared an habitual offender. The order directed that Norman be sentenced on the conviction to two years in prison, but suspended one year of the sentence on the conditions of good behavior and supervised probation.

2. A December 20, 1999 order from the Circuit Court of Pittsylvania County on Norman's petition "for restoration of his privilege to operate a motor vehicle in Virginia," which had been suspended since April 12, 1984. In pertinent part, the order directed as follows:

> Accordingly, the prayer of the petition should be granted, subject to the conditions set forth below . . ., it is ORDERED that pursuant to § 46.2-360 of the Virginia Code Annotated the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to George Halcott Norman, III.
>
> It is further ORDERED that this is not a license or privilege to drive in itself; that the petitioner shall present himself and this Order to the Department of Motor Vehicles for such administrative proceedings and payment of fees and costs as may be required, and further, that the petitioner is referred to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of this Order; that the petitioner shall not possess or use alcohol, alcoholic beverages or drugs (other than bonafide prescription drugs); that should the petitioner incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently.
>
> The object of this proceeding having been accomplished, it is ORDERED that the same be, and it is hereby, removed from the docket and place[d] among the ended of cases.

3. An order dated May 4, 2001, from the Circuit Court of Pittsylvania County finding that Norman "violated the terms of the Court's Order of December 20, 1999," and granting Norman a restricted license to drive to work and to medical providers on the condition that he be

monitored by Dan River ASAP for twelve months. The order directed that "should [Norman] have any violations of law during the period of supervision," his license would be revoked.

4. An order dated May 7, 2001, signed by Norman and issued by the Department of Motor Vehicles, stating that Norman, having "been adjudicated/determined to be an habitual offender," sought "a restricted license after having been declared an habitual offender or having had [his] license revoked pursuant to Virginia Code § 46.2-391(B) three years or more prior to this date," and giving Norman a one-year restricted license, pursuant to the May 4, 2001 court order, authorizing him to drive to and from work, to and from the Dan River ASAP office, and when medically necessary.

Norman argued at trial that, despite the May 4, 2001 order restricting his privilege to drive, the December 20, 1999 order had fully restored his privilege to drive and, thus, he could no longer be considered an habitual offender for the purpose of the charge at issue. The Commonwealth responded that the December 20, 1999 order did not fully restore Norman's privilege to drive, but only restored it on a conditional basis. The Commonwealth further contended that the conditional restoration was revoked by the circuit court when Norman violated the terms of the December 20, 1999 order and was issued a restricted license on May 7, 2001.

The trial court agreed with the Commonwealth, finding that, by signing the Department of Motor Vehicles order of May 7, 2001, Norman acknowledged that his status as an habitual offender remained in effect, despite the purported restoration of his driving privilege in the December 20, 1999 order. The court then found him guilty of the habitual offender charge and sentenced him to serve two years in prison on that conviction.

II. ANALYSIS

The dispositive issue in this case is whether the trial court was correct in determining that the December 20, 1999 order purportedly restoring Norman's privilege to drive did not terminate

- 4 -

Norman's status as an habitual offender. If so, the evidence presented by the Commonwealth was sufficient as a matter of law to support Norman's conviction for driving as an habitual offender, second or subsequent offense, in violation of Code § 46.2-357. If, however, that order terminated Norman's status as an habitual offender, the evidence was insufficient as a matter of law to show that Norman was an habitual offender at the time of the charged offense.

Norman contends, as he did below, that the circuit court fully restored his driving privilege in its December 20, 1999 order. Therefore, he concludes, he was no longer an habitual offender at the time of the offense at issue and the trial court erred in finding the evidence sufficient to convict him for operating a motor vehicle after having been declared an habitual offender.

The Commonwealth contends that, because the December 20, 1999 order provided for the conditional, rather than full, restoration of Norman's driving privilege, that order did not terminate Norman's status as an habitual offender. The Commonwealth argues that, as the trial court found, Norman's signature on the May 7, 2001 order proves that Norman knew his status as an habitual offender remained in effect after entry of the December 20, 1999 order. Hence, the Commonwealth concludes, the evidence established that Norman was an habitual offender at the time of the charged offense and was thus sufficient to sustain his conviction.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

Code § 46.2-357(A) provides, in pertinent part, that "[i]t shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect."

Therefore, to sustain Norman's "conviction for driving a motor vehicle in violation of that statute," the Commonwealth had to prove that, at the time of the alleged offense, Norman was determined or adjudicated an habitual offender and his privilege to drive was revoked.  Rose v. Commonwealth, 265 Va. 430, 434, 578 S.E.2d 758, 760 (2003).

It is well settled that,

> once a person is declared an habitual offender by order of a trial court, he retains that status and loses his driving privilege for so long as the order is effective.  Thus, . . . the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions.

Varga v. Commonwealth, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000).

Code § 46.2-360(1) allows a court to remove an individual's status as an habitual offender and to restore his or her privilege to drive.  That statute permits any person declared an habitual offender to petition the court for restoration of his or her driving privilege.  It further provides that,

> [o]n such petition, and for good cause shown, *the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe,* . . . if the court is satisfied from the evidence presented that: (i) at the time of the previous convictions, the petitioner was addicted to or psychologically dependent on the use of alcohol or other drugs; (ii) at the time of the hearing on the petition, he is no longer addicted to or psychologically dependent on the use of alcohol or such other drug; and (iii) the person does not constitute a threat to the safety and welfare of himself or others with regard to the driving of a motor vehicle. . . . *The court may, in lieu of restoring the person's privilege to drive, authorize the issuance of a restricted license* for a period not to exceed five years . . . .  Any violations of the restrictions shall be reported to the court, and the court may then modify the restrictions or revoke the license.

Code § 46.2-360(1)  (emphases added).

Thus, in responding to an habitual offender's petition for restoration of his or her privilege to drive, the court may take one of three actions under Code § 46.2-360(1): (1) deny the petition; (2) restore the person's privilege to drive, with or without conditions enforceable by the court; or (3) authorize the issuance of a restricted license. The statute draws no distinction between a "full restoration" and a "conditional restoration." Hence, an individual's privilege to drive is either restored or not restored under Code § 46.2-360(1).

Here, as reflected in the circuit court's December 20, 1999 order, Norman petitioned the court "for restoration of his privilege to operate a motor vehicle in Virginia." Finding Norman's petition to restore his privilege to drive "should be granted, subject to the conditions set forth" in the order, the circuit court ordered that, "pursuant to [Code] § 46.2-360[,] . . . the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to" Norman. The circuit court further ordered that Norman (1) report to the Department of Motor Vehicles before driving "for such administrative proceedings and payment[s] . . . as may be required," (2) be monitored and supervised by "Dan River ASAP" for one year, and (3) "not possess or use alcohol . . . or drugs." The court also stated in its order that, should Norman "incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently."[2]

Citing <u>Travis v. Commonwealth</u>, 20 Va. App. 410, 415, 457 S.E.2d 420, 422 (1995), Norman correctly acknowledges in his appellate brief that one who has been granted only a

---

[2] Since the issue is not before us, we need not consider here the authority of the trial court to "permanently" suspend the privilege to drive.

restricted license retains his habitual offender status.[3]  It is undisputed in this case, however, that the circuit court did not grant Norman a restricted license in its December 20, 1999 order, but rather a "restoration" of his privilege to drive.[4]  Accordingly, we conclude that, in entering the December 20, 1999 order, the circuit court restored Norman's privilege to drive.  Based on that order, the Department of Motor Vehicles was authorized to issue Norman a full, unrestricted operator's license.  The fact that the court prescribed certain conditions in restoring Norman's privilege to drive and, thus, retained authority to enforce those conditions,[5] does not alter the conclusion that Norman's privilege to drive was restored.  Indeed, given that the court cannot logically suspend what does not exist, the circuit court's admonition that it might suspend Norman's "privilege to drive" permanently if he failed to comply with the court's conditions only buttresses the conclusion that the court intended to restore Norman's driving privilege on December 20, 1999.

We further conclude that the trial court's reliance in its resolution of this case on Norman's signature on the Department of Motor Vehicles order of May 7, 2001, as proof that Norman acknowledged that his status as an habitual offender remained in effect, is misplaced.  Norman's mistaken belief that he was an habitual offender on May 7, 2001, is not dispositive of

---

[3] Indeed, on a petition for restoration of driving privileges under Code § 46.2-360(1), a trial judge wishing to maintain the petitioner's habitual offender status, without denying the petition outright, may authorize the issuance of a restricted license.

[4] The Commonwealth concedes as much in its appellate brief.

[5] Plainly, a court has the power to impose an appropriate remedy for a violation of a condition placed by the court on a restored privilege to drive under Code § 46.2-360(1).  See, e.g., Branch v. Branch, 144 Va. 244, 251, 132 S.E. 303, 305 (1926) ("Courts are invested with the power and charged with the duty of enforcing their [orders]."); Ange v. York/Poquoson Dep't of Soc. Servs., 37 Va. App. 615, 624, 560 S.E.2d 474, 478 (2002) ("A court's ability to punish a litigant for noncompliance with its orders is 'essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees.'" (quoting Steinberg v. Steinberg, 21 Va. App. 42, 46, 461 S.E.2d 421, 423 (1995))).

the issue of whether the circuit court's December 20, 1999 order terminated his status as an habitual offender, the resolution of which is a matter of law. Cf. Rose, 265 Va. at 435-36, 578 S.E.2d at 761 (holding that, in light of the "incomplete" order that failed to direct defendant not to drive on the Commonwealth's highways, as required by statute, proof of defendant's awareness

that he was an habitual offender and of his mistaken belief that his privilege to drive had been revoked was not sufficient to prove that the revocation of defendant's privilege to drive remained in effect at the time of the alleged offense).

We hold, therefore, that the circuit court's order of December 20, 1999 terminated Norman's status as an habitual offender on that date.  See Varga, 260 Va. at 552, 536 S.E.2d at 714 (holding that one's habitual offender status "remains in force until that person actually has his privilege to drive restored").  We also hold that, because the record contains no evidence that a court declared Norman an habitual offender subsequent to that date, the Commonwealth failed to show that Norman was an habitual offender when he drove on August 14, 2001, and the trial court erred in finding the evidence sufficient to sustain his conviction for driving as an habitual offender, second or subsequent offense.

Accordingly, we reverse Norman's conviction and dismiss the indictment.

Reversed and dismissed.

Humphreys, J., with whom Bumgardner, J., joins, dissenting.

Because I would find the evidence presented below sufficient to establish Norman's status as an habitual offender, I dissent from the majority's analysis and conclusion.

As the majority notes, Code § 46.2-357(A) defines the felony offense of driving after being declared an habitual offender. "In pertinent part, Code § 46.2-357(A) states that '[i]t shall be unlawful for any person to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect.'" Varga v. Commonwealth, 260 Va. 547, 550, 536 S.E.2d 711, 713 (2000) (quoting Code § 46.2-357(A)).

Code § 46.2-360(1) permits a court to remove an individual's status as an habitual offender by permitting the individual so declared, under certain circumstances, to petition the court for restoration of his or her driving privilege. Code § 46.2-360(1) states as follows, in relevant part:

> Any person who has been found to be an habitual offender . . . *may petition the court* in which he was found to be an habitual offender, or the circuit court in the political subdivision in which he then resides *to*:
>
> 1. *Restore his privilege to drive a motor vehicle* in the Commonwealth, provided that five years have elapsed from the date of the final order of a court entered under this article, or if no such order was entered then the notice of the determination by the Commissioner. *On such petition, and for good cause shown, the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe* subject to other provisions of law relating to the issuance of driver's licenses, if the court is satisfied from the evidence presented that: (i) at the time of the previous convictions, the petitioner was addicted to or psychologically dependent on the use of alcohol or other drugs; (ii) at the time of the hearing on the petition, he is no longer addicted to or psychologically dependent on the use of alcohol or such other drug; and (iii) the person does not constitute a threat to the safety and welfare of himself or others with regard to the driving of a motor vehicle. . . . *The court may, in lieu of restoring the person's privilege to drive, authorize the issuance of a restricted license for a period not to exceed five years in accordance with the provisions*

> *of subsection E of § 18.2-271.1.* The local Virginia Alcohol Safety
> Action Program shall during the term of the restricted license
> monitor the person's compliance with the terms of the restrictions
> imposed by the court. Any violation of the restrictions shall be
> reported to the court, and the court may then modify the
> restrictions or revoke the license.

(Emphases added).

The majority recognizes that a "conditional restoration" is available pursuant to the terms of the statute. Nevertheless, the majority declares that this distinction is one without a difference. In so holding, the majority ignores the term "conditions," as used in the statute, by finding that any "restoration" of an individual's privilege to drive necessarily operates to remove the individual's status as an habitual offender and fully "restores" their privilege to drive, despite any statutorily permitted conditions imposed by the trial court.

I would not so lightly cast aside the legislature's explicit use of the term "conditions." See Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001) ("When the legislature has used words of a plain and definite meaning, courts cannot accord those words a meaning that amounts to holding that the legislature did not mean what it actually expressed."); see also Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (noting the "settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary"). That term, as defined in Black's Law Dictionary, presupposes:

> A future and uncertain event on which the existence or extent of an
> obligation or liability depends; an uncertain act or event that
> triggers or negates a duty to render a promised performance.

Black's Law Dictionary 288 (7th ed. 1999).

Thus, although the trial court, in December of 1999, may have "restored" Norman's privilege to drive, it did so only conditionally, as the majority recognizes is permitted pursuant to Code § 46.2-360(1). Specifically, the trial court's order required Norman to "present himself and

[the] Order to the Department of Motor Vehicles for such administrative proceedings and payment of fees and costs as may be required," to present himself "to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of [the] Order," and to refrain from possessing or using "alcohol, alcoholic beverages or drugs." The order further provided that if Norman were to "incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to [Norman] to show cause why his privilege to drive should not be suspended permanently."[6] By restoring Norman's privilege to drive, contingent upon his performance of these express conditions (whether positive or negative), the trial court did not fully restore Norman's driving privilege as the majority declares. Instead, the trial court expressly retained the authority to revoke the privilege if Norman failed to comply with the conditions set forth in the order granting the conditional restoration. Such a retention of authority is clearly permitted by the statute and simply cannot be construed as a removal of Norman's status as an habitual offender, much less a mandate declaring the order originally placing Norman in that status completely null and void. See Varga, 260 Va. at 551, 536 S.E.2d at 714 ("Reading the habitual offender statutes *in pari materia*, it is clear that once a person is declared an habitual offender by order of a trial court, he retains that status and loses his driving privilege for so long as the order is effective. Thus, unless the trial court specifically limits the duration of the effect of the order . . . the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions.").

---

[6] I agree with the majority's conclusion that because the issue is not before us, we need not here consider the trial court's authority to "permanently" suspend Norman's privilege to drive.

Further, the majority's implicit contention that the only way a trial court may retain an individual's status as an habitual offender is to issue a restricted license, belies the plain language of the statute. As the majority states, under Code § 46.2-360(1), the trial court may restore an individual's privilege to drive, either with or without conditions, or it may issue the individual a restricted license. A restricted license, issued "in accordance with the provisions of subsection E of § 18.2-271.1," permits an individual to drive only for certain specified purposes. See Code §§ 46.2-360(1) and 18.2-271.1. However, a restored license with conditions, restores an individual's privilege to drive for any lawful purpose, but - by its very terms - makes the full restoration of that individual's driving privilege contingent upon the court ordered conditions. As stated above, the record demonstrates that this is what has occurred in the case at bar. I believe that such a scenario is clearly permitted by the plain language of the statute.

Moreover, Norman was aware that he retained habitual offender status when the circuit court found that he violated the provisions of the December 20, 1999 order and, by its order of May 4, 2001, revoked his driving privilege, granting him instead restricted driving privilege. Indeed, when he signed the resulting Restricted Driver's License Order, on May 7, 2001, Norman acknowledged that he was granted the restricted license "after having been adjudicated/determined to be an habitual offender." Yet, Norman never appealed and/or took issue with the clear import of these orders until his trial on the charge at issue, which took place in March of 2002 - nearly nine months later. See Morgan v. Commonwealth, 28 Va. App. 645, 507 S.E.2d 665 (1998) (holding, in the context of an habitual offender adjudication, that where a defendant has knowledge of an underlying order, never appeals the order, and subsequently violates the order, he cannot attack the underlying order in a subsequent proceeding).

In light of the above, I would hold that the trial court properly found the evidence sufficient to establish Norman's status as an habitual offender at the time of the offense, and I would, thus, affirm the judgment of the trial court.

November, 2003.

George Halcott Norman, III, Appellant,

  against      Record No. 1237-02-3
               Circuit Court Nos. CR01000818-00, CR01000819-00,
                 CR01000831-00 and CR01000832-00

Commonwealth of Virginia, Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner, Frank, Humphreys, Clements, Felton and Kelsey


For reasons stated in writing and filed with the record, the Court is of opinion that there is error in that part of the judgment pertaining to appellant's conviction of driving as an habitual offender, second or subsequent offense (CR01000832-00). Accordingly, the opinion previously rendered by a panel of this Court on May 6, 2003 is withdrawn and the mandate entered on that date is vacated. The judgment of the trial court with regard to that conviction is reversed and annulled and the indictment is dismissed.

Appellant did not challenge on appeal those parts of the judgment pertaining to appellant's convictions of driving under the influence of alcohol, second offense within five years (CR01000818-00), brandish a firearm (CR01000819-00), and possessing a firearm as a convicted felon (CR01000831-00). Accordingly, those convictions are not disturbed by this order.

It is ordered that the trial court allow counsel for the appellant a total fee of $925 for services rendered the appellant on this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present: Judges Bumgardner, Humphreys and Clements
Argued at Salem, Virginia


GEORGE HALCOTT NORMAN, III

OPINION BY

v.        Record No. 1237-02-3         JUDGE ROBERT J. HUMPHREYS
MAY 6, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
B. A. Davis, III, Judge Designate

Jon Ian Davey (Law Office of Jon I. Davey, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


George Halcott Norman, III appeals his conviction, after a bench trial, for driving as an habitual offender, second or subsequent offense.[7] Norman contends the trial court erred in determining that he was an habitual offender because his driving privileges had been fully restored prior to his arrest on the charge. For the reasons that follow, we affirm the judgment of the trial court.

I. Background

On August 14, 2001, Deputy Sheriff H.L. Gatewood, of the Pittsylvania County Sheriff's Department, spotted Norman's vehicle travelling east on Route 57. Because he had been given a B.O.L. ("be on the lookout") message for that car by the dispatcher, Deputy Gatewood stopped the car. When he approached the car, he observed that Norman was the sole occupant of the car. He

---

[7] Norman was also convicted of driving under the influence of alcohol, second offense within five years, possessing a firearm as a convicted felon and brandishing a firearm. Norman pleaded guilty to these charges and does not raise any issues as to these convictions on appeal.

asked Norman for identification, but Norman was unable to produce his driver's license. However, he told Gatewood that he had "a license at home and it was a piece of paper issued by the Court." Deputy Gatewood observed that Norman had a gun in the car, which was lying on the front floorboard, with the barrel pointed toward the driver's side door. He further observed that Norman was "severely intoxicated." Gatewood arrested Norman for drunk driving and brandishing a firearm.

Gatewood checked Norman's social security number through his dispatcher and was told that Norman's driver's license was either "suspended or revoked." He then proceeded to Norman's home to obtain Norman's license. Norman's girlfriend gave Deputy Gatewood a "green sheet of paper," stating that Norman's privilege to drive was restricted pursuant to a May 4, 2001 court order.

When he arrived at the police station, Deputy Gatewood ran Norman's criminal history and learned that he was a convicted felon. He also ran Norman's driver's license and found that he was indeed, driving on a restricted license. Norman was then additionally charged with driving as an habitual offender, second or subsequent offense, and possessing a firearm as a convicted felon.

At trial, the Commonwealth and Norman introduced several documents pertaining to the habitual offender charge. The documents are summarized as follows:

> 1. An October 13, 1989 order from the Circuit Court of Pittsylvania County, entering judgment on Norman's guilty plea of operating a motor vehicle after having been declared an habitual offender. The order directed that Norman be sentenced on the conviction to two years in prison, but suspended one year of the sentence on the conditions of good behavior and supervised probation.

> 2. A December 20, 1999 order from the Circuit Court of Pittsylvania County on Norman's petition "for restoration of his privilege to operate a motor vehicle in Virginia," which had been suspended since April 12, 1984. The order directed as follows:

> Accordingly, the prayer of the petition should be granted, subject

to the conditions set forth below . . . it is ORDERED that pursuant to § 46.2-360 of the Virginia Code Annotated the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to George Halcott Norman, III.

It is further ORDERED that this is not a license or privilege to drive in itself; that . . . petitioner is referred to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of this Order; that the petitioner shall not possess or use alcohol, alcoholic beverages or drugs . . . ; that should petitioner incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently.

The object of this proceeding having been accomplished, it is ORDERED that the same be, and it is hereby, removed from the docket and place[d] among the ended of cases.

3.  An order dated May 4, 2001, from the Circuit Court of Pittsylvania County finding that Norman "violated the terms of the Court's Order of December 20, 1999," and granting Norman a restricted license to drive to work and to medical providers on the condition that he be monitored by Dan River ASAP for twelve months.  The order directed that "should [Norman] have any violations of law during the period of supervision," his license would be "permanently" revoked.

4.  An order issued by the Department of Motor Vehicles, dated May 7, 2001, stating that Norman sought "a restricted license after having been declared an habitual offender or having had [his] license revoked pursuant to Virginia Code § 46.2-391(B) three years or more prior to this date," and giving Norman a one-year restricted license, pursuant to the May 4, 2001 court order, authorizing him to drive to and from work, to and from the Dan River ASAP office, and when medically necessary.

Norman argued that despite the May 4, 2001 order, restricting his driving privileges, the December 20, 1999 order had fully restored his driving privileges and, thus, he could no longer be considered an habitual offender for the purpose of the charge at issue.  The Commonwealth responded that the December 20, 1999 order did not fully restore Norman's privileges, but only restored them on a conditional basis.  The Commonwealth further contended that the conditional

restoration was revoked by the circuit court when Norman violated the terms of the December 20, 1999 order and was issued a restricted license on May 7, 2001.

The trial court agreed with the Commonwealth, finding that by signing the DMV order of May 7, 2001, Norman acknowledged that his status as an habitual offender remained in effect, despite the purported restoration of his driving privileges in the December 20, 1999 order. The court then found him guilty of the habitual offender charge and sentenced him to serve two years in prison on that conviction.

II. Analysis

On appeal, Norman contends that the trial court erred in finding the evidence sufficient to support his conviction for operating a motor vehicle after having been declared an habitual offender. As he argued below, Norman maintains that the circuit court fully restored his driving privileges in its December 20, 1999 order and that, therefore, he was no longer an habitual offender at the time of the offense at issue. We disagree.

We first note that the standard for appellate review of criminal convictions is well established. "When a defendant challenges the sufficiency of the evidence, we are required to review the evidence 'in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom.'" Collins v. Commonwealth, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). "The conviction will not be reversed unless it is plainly wrong or without evidence to support it." Id.; see also Code § 8.01-680.

Code § 46.2-357(A) defines the felony offense of driving after being declared an habitual offender. "In pertinent part, Code § 46.2-357(A) states that '[i]t shall be unlawful for any person to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect.'" Varga v. Commonwealth, 260 Va. 547, 550,

536 S.E.2d 711, 713 (2000) (quoting Code § 46.2-357(A)).

Code § 46.2-360 permits any person declared an habitual offender to petition the court for restoration of his or her driving privileges, providing as follows in relevant part:

> Any person who has been found to be an habitual offender where the determination or adjudication was based in part and dependent on a conviction as set out in subdivision 1 b of former § 46.2-351, may petition the court in which he was found to be an habitual offender, or the circuit court in the political subdivision in which he then resides to:
>
> 1.  Restore his privilege to drive a motor vehicle in the Commonwealth, provided that five years have elapsed from the date of the final order of a court entered under this article, or if no such order was entered then the notice of the determination by the Commissioner.  On such petition, and for good cause shown, the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe . . . .
>
> 2.  Issue a restricted permit to authorize such person to drive a motor vehicle in the Commonwealth in the course of his employment, to and from his home to the place of his employment or such other medically necessary travel as the court deems necessary and proper upon written verification of need by a licensed physician, provided that three years have elapsed from the date of the final order, or if no such order was entered then the notice of the determination by the Commissioner. . . .

(Emphasis added).

> Reading the habitual offender statutes in pari materia, it is clear that once a person is declared an habitual offender by order of a trial court, he retains that status and loses his driving privilege for so long as the order is effective.  Thus, . . . the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions.

Varga, 260 Va. at 551, 536 S.E.2d at 714.

Code § 46.2-360 is one of the code sections that allows a court to remove an individual's status as an habitual offender and to restore his or her privilege to drive.  Indeed, that particular code section permits the court to:  1) fully restore an individual's driving privileges; 2) restore an individual's driving privileges on certain conditions; or 3) grant an individual a restricted driving

- 23 -

privilege, allowing the individual to drive only to and from work, when medically necessary, or to where the trial court otherwise deems necessary. See Travis v. Commonwealth, 20 Va. App. 410, 415, 457 S.E.2d 420, 422 (1995) (noting that relief under Code § 46.2-360(2) provides for a restricted license, whereas Code § 46.2-360(1) provides for "a full restoration of driving privileges"); see also Code § 46.2-360(1) and (2).

The parties do not dispute that here, in its December 20, 1999 order, the trial court granted Norman a "restoration" of his driving privileges, as opposed to a "restricted" privilege to drive. However, although the order appears somewhat inartfully written, when read as a whole, the trial court's order makes it clear that it granted Norman's petition for restoration, subject to certain conditions contained in the order. Specifically, the order required Norman to "present himself and [the] Order to the Department of Motor Vehicles for such administrative proceedings and payment of fees and costs as may be required," to present himself "to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of [the] Order," and to refrain from possessing or using "alcohol, alcoholic beverages or drugs." The order further provided that if Norman were to "incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to [Norman] to show cause why his privilege to drive should not be suspended permanently."[8] Thus, the court's actions, most significantly its conditional restoration of Norman's driving privileges and its continuing retention of authority over Norman's privilege to drive, belie Norman's assertion that his adjudication as an habitual offender was no longer valid pursuant to the December 20, 1999 order. See Travis, 20 Va. App. at 415, 457 S.E.2d at 422.[9]

---

[8] Since the issue is not before us, we need not consider here the authority of the trial court to "permanently" suspend the privilege to drive.

[9] The dissent's contrary interpretation of the statute renders the plain and unambiguous language of the statute meaningless. Indeed, the dissent recognizes that a conditional restoration

- 24 -

Moreover, as the trial court correctly noted, Norman was aware that he retained habitual offender status when the circuit court found that he violated the provisions of the December 20, 1999 order and, by its order of May 4, 2001, revoked his "full" driving privileges, granting him instead, restricted driving privileges. Indeed, when he signed the resulting Restricted Driver's License Order, on May 7, 2001, Norman acknowledged that he was granted the restricted license privilege "after having been adjudicated/determined to be an habitual offender."

Accordingly, we hold that the trial court properly found the evidence sufficient to establish Norman's status as an habitual offender at the time of the offense, and we affirm the judgment of the trial court.

<u>Affirmed.</u>

---

is available pursuant to the terms of the statute. Nevertheless, in its analysis, the dissent ignores the term "conditional" and finds that <u>any</u> "restoration" of an individual's privilege to drive necessarily operates to remove the individual's status as an habitual offender and <u>fully</u> "restores" their privilege to drive, despite any statutorily permitted conditions imposed by a trial court. <u>See Shelor Motor Co. v. Miller</u>, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001) ("When the legislature has used words of a plain and definite meaning, courts cannot accord those words a meaning that amounts to holding that the legislature did not mean what it actually expressed."); <u>see also Hubbard v. Henrico Ltd. Partnership</u>, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (noting the "settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary").

Clements, J., dissenting.

I respectfully dissent from the majority's opinion. The dispositive issue in this case is whether the trial court's December 20, 1999 order restoring Norman's driving privileges terminated his status as an habitual offender. The majority concludes that, because the December 20, 1999 order provided, pursuant to Code § 46.2-360, for the conditional, rather than full, restoration of Norman's driving privileges, that order did not terminate Norman's status as an habitual offender. I disagree with the majority's premise and conclusion.

As the majority notes, "the habitual offender status of [a] person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored." Varga v. Commonwealth, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000). Here, as reflected in the trial court's December 20, 1999 order, Norman petitioned the court "for restoration of his privilege to operate a motor vehicle in Virginia." The trial court, finding that Norman's petition to restore his driving privileges "should be granted, subject to the conditions set forth" in the order, ordered that "pursuant to [Code] § 46.2-360 . . . the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to" Norman. The trial court further ordered that Norman (1) report to the Department of Motor Vehicles before driving "for such administrative proceedings and payment[s] . . . as may be required," (2) be monitored and supervised by "Dan River ASAP" for one year, and (3) "not possess or use alcohol . . . or drugs." The court further stated that, should Norman "incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently."

Code § 46.2-360(1), which pertains to petitions to restore driving privileges,[10] provides, in pertinent part, that the court may, in granting a petitioner's request for restoration of his or her driving privileges, "restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe" or, "in lieu of restoring the person's privilege to drive, authorize the issuance of a restricted license."

> Under basic rules of statutory construction, we examine a statute in its entirety, rather than by isolating particular words or phrases. When the language in a statute is clear and unambiguous, we are bound by the plain meaning of that language. We must determine the General Assembly's intent from the words appearing in the statute, unless a literal construction of the statute would yield an absurd result.

Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001) (citations omitted).

Applying these principles, I find that the legislature clearly intended that a court acting on a petition for restoration of driving privileges be permitted to take one of three actions under Code § 46.2-360(1): (1) deny the petition; (2) restore the person's driving privileges, with or without conditions; or (3) grant a restricted license. The statute draws no distinction between a "full restoration" and a "conditional restoration." Hence, an individual's privilege to drive is either restored or not restored under Code § 46.2-360(1).

Citing Travis v. Commonwealth, 20 Va. App. 410, 415, 457 S.E.2d 420, 422 (1995), Norman acknowledges in his appellate brief that one who has been granted only a restricted license "retains his habitual offender status." As the majority points out, however, it is undisputed in this case that the trial court did not grant Norman a restricted license but granted him a "restoration" of his privilege to drive.

---

[10] In reciting what it says is the "relevant part" of Code § 46.2-360, the majority includes subsection 2 of that statute in its recitation. That subsection, however, relates only to petitions for the issuance of a restricted license. Thus, because Norman's petition was for restoration of his privilege to drive rather than for a restricted license, Code § 46.2-360(2) is inapplicable in this case.

Accordingly, the conclusion must be reached that, in entering the December 20, 1999 order, the trial court restored Norman's driving privileges. Based on that order, the Department of Motor Vehicles would have undoubtedly issued Norman a full, unrestricted operator's license. The fact that the court prescribed certain conditions in restoring Norman's privilege to drive and, thus, retained authority to enforce those conditions does not alter the conclusion that Norman's privilege to drive was restored. Indeed, given that the court cannot logically suspend what does not exist, the trial court's admonition that it might suspend Norman's "privilege to drive" permanently if he failed to comply with the court's conditions only buttresses the conclusion that the court intended to restore Norman's driving privileges on December 20, 1999.

I would hold, therefore, that the trial court's order of December 20, 1999, terminated Norman's status as an habitual offender on that date. See Varga, 260 Va. at 552, 536 S.E.2d at 714 (holding that one's habitual offender status "remains in force until that person actually has his privilege to drive restored"). I would also hold that, because no court declared him an habitual offender subsequent to that date, Norman was not an habitual offender when he drove on August 14, 2001,[11] and the trial court erred in finding him so.

For these reasons, I would reverse Norman's conviction for driving as an habitual offender, second or subsequent offense.

---

[11] I believe the majority's reliance on the trial court's finding that "Norman was aware that he retained habitual offender status" after December 20, 1999, is misplaced. Norman's perceptions and beliefs have no bearing on the issue of whether the trial court's December 20, 1999 order terminated his status as an habitual offender, the resolution of which is purely a matter of law.